**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  )<br>  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )  **NO. 5:24-CR-00014-DCR-MAS**<br>  )<br>**RICHARD PAUL BRYANT,**  )<br>  )<br>  Defendant.  )<br>  )<br>  ) | |

**DETENTION OPINION AND ORDER**

Defendant Richard Paul Bryant ("Bryant") came before the undersigned for an initial appearance and arraignment on March 27, 2024. [DE 11]. The United States orally moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C) and (E). The Court heard proffer and arguments regarding the issue of detention, and the Court ultimately granted the United States' motion. This Opinion and Order memorializes the Court's reasons for detaining Bryant in compliance with the Bail Reform Act ("BRA").

## I.   FACTS AND PROCEDURAL HISTORY

.   The Indictment alleges in two separate counts that Bryan knowingly and intentionally distributed a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a). [DE 1 (Indictment)]. On the United States' motion, the Court issued a Writ of Habeas Corpus Ad Prosequendum

commanding the warden of Blackburn Correctional Complex, where Bryant was serving a sentence for violations of Kentucky law, to deliver Bryant to the United States Marshal so he could be arraigned on federal charges in this Court. [DE 9].

Bryant came before the undersigned for an initial appearance and arraignment on March 27, 2024. [DE 11]. Following his arraignment and entry of a not-guilty plea, the Court turned to the issue of detention. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(C) and (E). By counsel, Bryant expressed a desire to have a hearing on the issue of detention and a desire to return to state custody, where he expected to be released in 2030. Indeed, the United States Probation Office ("USPO") advised the Court that Bryant is serving a seven-year sentence for drug-related convictions in state court. According to USPO, Bryant has three convictions for possession of a controlled substance in the first degree, two convictions for trafficking a controlled substance in the first degree, four convictions for operating a motor vehicle under the influence in the first degree, one conviction for carrying a concealed and deadly weapon; one conviction for assault in the fourth degree (domestic violence); and one conviction for possession of a controlled substance in the third degree.

During the Detention Hearing, Counsel proffered that Bryant has several health issues, including an enlarged heart and a history of blood clots. At the facility where he was previously serving his state court sentence, Blackburn Correctional Complex, he was receiving medication and treatment for his health conditions. Bryant also is part of a substance use program at the facility. Now, counsel proffers

2

that Bryant is concerned that he will not receive the quality treatment he was previously receiving if it all. Accordingly, counsel proposed that Bryant be released from federal custody and back into state custody until such time he is needed again in this action.

## II. LEGAL FRAMEWORK

Given the charges in the Indictment, a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") regarding both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant fails to rebut the presumption, he must be detained. Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention. *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted. Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir.

1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.

### III.  ANALYSIS

On the record, the Court detailed its practical concerns regarding Bryant's release from federal custody, specifically concerning the procedural and administrative difficulties surrounding Bryant's Writ of Habeas Corpus Ad Prosquendum. "When a State sends a prisoner to federal authorities pursuant to such a writ, the prisoner is merely 'on loan' to the federal authorities, with the State retaining primary jurisdiction over the prisoner." *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) (quoting *United States v. Casas*, 425 F.3d 23, 67 (1st Cir. 2005) (internal quotation marks omitted). The "loan" expires when a defendant is no longer in the custody of federal authorities. A defendant, assuming he or she is

convicted on federal charges, only enters primary federal custody "when the state authorities relinquish the prisoner on satisfaction of the state obligation." *White*, 874 F.3d at 507 (quoting *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998)).

Considering the above, if Bryant is released back into state custody, the government would have to move for, and the Court issue, a new Writ of Habeas Corpus Ad Prosequendum each time he was needed for proceedings in federal court. Given that the process of acquiring a state prisoner can take as long as a month, the Court finds that Bryant's proposed release to state custody would be impracticable at best and, at worst, would prolong his federal prosecution.

Setting aside the administrative strain and speedy trial concerns noted above, the Court is further bound to consider the issue of Bryant's pretrial release or detention within the framework of the Bail Reform Act.[1] Bryant is indicted with two separate counts of knowingly and intentionally distributing a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a), creating a rebuttable presumption that he is both a risk of nonappearance and a risk of danger to the community.

---

[1] Several courts have considered whether the BRA should apply to defendants appearing in federal court on a writ given that "no 'release' in a traditional sense (i.e., the restoration of liberty) is possible." *United States v. Dimmick*, 82 F. Supp. 3d 866, 868 (N.D. Iowa 2015) (concluding that "[n]either Section 3142 nor any other statute creates an exception for defendants appearing by Writ"); *see also United States v. Kurtenbach*, No. 5:17-CR-50071-JLV, 2017 U.S. Dist. LEXIS 121464, at *14–15 (D.S.D. Aug. 2, 2017) (following *Dimmick*); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) (holding "that the BRA does not create an exception for a defendant who is subject to detention outside of [the court's] jurisdiction"). Based upon a plain reading of the BRA, this Court finds that the traditional BRA analysis should apply regardless of the defendant's custodial status.

### A.   CUSTODIAL STATUS AS A BRA CONSIDERATION

Preliminarily, Bryant argues that his current prison sentence alone sufficiently mitigates his risk of nonappearance in court and his risk of danger to others or the community. Under the BRA, one's custodial status is not an enumerated factor that courts must consider when assessing one's risk of nonappearance. *See infra*, n.1 (BRA factors under 18 U.S.C. § 3142(g)). As other district courts have noted,

> Congress could have specified, for example, that the fact a defendant would be returned to another jurisdiction's custody is a factor weighing in favor of releasing that defendant from federal custody.

*Dimmick*, 82 F. Supp. 3d 866 at 870; *see also Kurtenbach*, 2017 U.S. Dist. LEXIS 121464, at *15 (same); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1128 (N.D. Iowa 2018) (following *Dimmick* when there is an Immigration and Customs Enforcement ("ICE") detainer against defendant seeking release); *United States v. Kirschenmann*, No. 5:22-CR-50169-JLV, 2023 U.S. Dist. LEXIS 11039, at *9 (D.S.D. Jan. 19, 2023) (holding that "the Bail Reform Act's omission of any reference or guidance as to whether a defendant appearing on a writ should be returned to state custody establishes that it is not a proper consideration under the Bail Reform Act.").

The Court finds that a plain reading of the § 3142(g) factors leaves little room for interpretation. Congress did not include custodial status as a factor to consider when undergoing the pretrial release or detention analysis. In fact, to do so would virtually guarantee pretrial release from federal custody for any defendant brought forward on a Writ. *Dimmick*, 82 F. Supp. 3d at 870. Thus, the Court shall not

6

consider Bryant's custodial status as a factor for its risk of nonappearance or danger analyses.

B.  **RISK OF NONAPPEARANCE**

Bryant presented little evidence to overcome the presumption that Bryant is at risk of nonappearance. Counsel proffered that Bryant has serious health concerns requiring more-than-occasional medical care. The Court generously construes this fact as a mitigating factor, as his stated need for ongoing and consistent medical treatment could be considered evidence that he is a nonappearance risk. *C.f. United States v. Colon-Garcia*, No. 22-12-JJM-PAS-1, 2022 U.S. Dist. LEXIS 211311, at *13 (D.R.I. Nov. 22, 2022) (considering defendant's ongoing medical treatment for high blood pressure and sleep apnea but ultimately finding that it did not offset his risk of flight); *United States v. Jones*, No. 1:22-cr-00082-TWP-MJD-1, 2023 U.S. Dist. LEXIS 71624, at *9 (S.D. Ind. Apr. 25, 2023) (weighing defendant's preexisting medical condition requiring dialysis in its nonappearance risk analysis but ultimately detaining defendant).

However, this alone is insufficient to overcome the presumption. *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring "probative, credible evidence to rebut the presumption"). On this record, the Court likewise cannot fashion any conditions that would mitigate the risk of nonappearance arising from the presumption.

C.  **DANGER TO THE COMMUNITY**

In light of the charges alleging two instances of distribution of a controlled substance, a presumption of detention also applies as to Bryant's risk of danger to

7

the community. In drafting the BRA, Congress determined that "drug offenders pose a special risk of flight and dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989). Specifically, "the risk of continued narcotics trafficking on bail constitutes a risk to the community." *Id.*; *see also United States v. Stone*, 608 F.3d 939, 955 n. 6 (6th Cir. 2010) ("And our Court routinely affirms, on dangerousness grounds, the pretrial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community.").

The government again argues that Bryant failed to overcome the presumption of detention. The Court agrees that Bryant has not met his burden of production. Furthermore, the Court finds that it could not craft conditions that could sufficiently mitigate the danger to the community, especially in light of his protracted history of drug trafficking as evidenced by his multiple state drug trafficking convictions, for which he is currently serving a seven-year sentence.

## IV.    CONCLUSION

For the above-stated reasons, the Court finds that Bryant failed to overcome the presumption of detention as to his risk of nonappearance and danger to the community under a BRA analysis. The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Bryant's appearance or that he will not pose a danger to another or the community. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Richard Paul Bryant.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 26th of April, 2024.

*Matthew A. Stinnett*
MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY